## TIMON *v.* MORAN.

*Partition—Premises not partible.*

| 54 | 441 |
| 69 | 413 |

In making partition under General Statutes, chapter 228, of real estate among tenants in common, when the property is of such description that it cannot be divided so as to give each his equal share without great prejudice or inconvenience, the committee may, and generally should, receive and consider such offers as may be made by the several owners for a choice of the parcels into which the premises are divided.

PETITION FOR PARTITION, by John Timon against Michael Moran. A committee appointed at the last term, reported at the January term, 1874. The property consists of a lot of land and a house of three tenements. The plaintiff has lived many years in the east and the defendant in the west tenement, and the middle one has been let by both parties to other persons. The report assigns the east and middle tenements to the plaintiff, and fixes $500 as the sum to be paid by him to the defendant. Upon the coming in of the report, the defendant offered to pay the plaintiff a considerable sum more than $500 if the parts assigned to each could be exchanged. The court ordered the report to be recommitted for the purpose of the committee hearing the parties in relation to this offer. Another hearing was had before the committee, and their report was returned unaltered on this point. The court inferred that the committee felt bound to appraise the property assigned to each party according to their judgment of its value, and that their judgment was not altered by the second hearing. The defendant then made several motions, and furnished the following affidavit:

" I, Michael Moran, on oath depose and say, that at the hearing before the committee appointed to make partition between me and Timon of our estate in common, situate in Nashua, I offered through my counsel to give $650 for the share of the estate assigned in the report to Timon, instead of the $500 which he was ordered to pay by the report. This offer was made openly to the committee and to Timon and his counsel, and my counsel then requested the committee to ask of Timon whether he would give more than that, or was willing to take that. The committee declined to ask this of Timon, and I, then, through my counsel, offered a paper to the committee on which was the following proposition: That I would give or take $850, at Timon's option; that if he would put on paper a sum which he would take, to be seen only by the committee, I would give $50 more, whatever the sum might be, provided the sum with $50 added did not exceed the $850, or if with the $50 added it came within $50 of my $850, I would take $800, or give $850, at Timon's option. The committee declined to receive or consider the paper or the proposition contained in it, and

declined to ask Timon to submit on paper for their inspection any sum which he would take. Timon having testified before the committee, my counsel, in cross-examining him, inquired what in his opinion was the fair difference in value between the part of the estate on the east side of the dividing line, as established in the report, and that on the west, and he declined to answer, and declined to answer any question as to what he thought ought to be paid or to be received by him or by me to make the division equal, in case he or I should have the east part, and the committee declined to require of him to answer any such question. When the hearing was about being closed, I testified under oath that I deemed $850 to be a fair sum to be paid by the party who had the east part; that I would give that sum, or take it, at Timon's option. I made said propositions and offer in good faith, and am now ready to pay said sum of $850, or take it, at Timon's option, if he chooses that I pay it to him,—I to take the east part, as the committee propose to divide the estate, or, if he chooses to pay it, he to take the east part." Signed and sworn to.

The court reserved the question, whether the court or the committee had power to appraise the difference in the values of the parts to be assigned to the parties by the offers of the defendant, or to apply the principle of an auction sale in any way, instead of the judgment of the committee upon the question of the difference of values, and what order should be made.

*Bailey*, for the plaintiff.

*Geo. Y. Sawyer & Sawyer, Jr.*, for the defendant.

LADD, J. In making the partition in this case, the committee acted under sec. 25 of ch. 228, Gen. Stats., which is as follows: "When any estate is so situated that it cannot be divided so as to give to each owner his equal share therein without great prejudice or inconvenience, the same, or part thereof, may be assigned to one of the owners, he paying to the other persons interested, who shall have less than their shares, such sum of money as the committee shall award, or giving bond," &c. It need not be said that this statute is quite imperfect, and, therefore, that many cases must arise where full and complete justice can be done only by a resort to the concurrent jurisdiction exercised by courts of equity in the matter of partition. *Crowell* v. *Woodbury*, 52 N. H. 613; *Barney* v. *Leeds*, *ante* 128.

The committee here, acting beyond question in entire good faith, appraised the portion assigned to each of the tenants according to their judgment of its value, and the question is, whether they could legally act in any other way; that is, whether under the statute above quoted they were at liberty to receive the offers or bids of Moran, and make them, instead of their own judgment of the value of the premises, the basis of distributing the shares, and of their award of the sum to be paid by the one receiving the more valuable portion to the other. It

will be observed that the statute is silent on this point.  Where an equal division cannot be made, it merely calls upon the committee to award the sum which shall be paid by the one receiving more than his equal share to the one receiving less.

There can be no doubt, we think, but that the committee making partition under the statute should be governed, as far as practicable, by the principles of equity.  Suppose the estate to be divided were a family homestead, which has come to two brothers by descent: its situation and character are such that in the judgment of the committee it cannot be divided so as to give each his equal share therein without great prejudice or inconvenience, and they determine to assign the whole to one, awarding a sum to be paid by him to the other: each of the heirs is desirous of possessing the whole property, and for obvious reasons may be willing to pay much more than the cash or market value of the other half, provided the whole premises be assigned to him: one has just as good right to have the whole as the other: upon what principle of equity can it be decreed that one shall have the whole upon paying a sum much less, perhaps, than either would be willing to pay for the option?—upon what principle is it to be decided which shall have the ancestral home, and which shall be compelled to receive the appraised value of his share in money?—how can the committee reach a result which is required by the plainest dictates of common justice, without receiving and giving effect to offers like those made in the present case?  It is true, this may sometimes give one who possesses means an advantage over one who does not; but the committee have it in their power, and it would doubtless be their duty, to see that neither gets the share of the other without paying at least its fair cash valuation; and the chances of doing injustice would seem, upon the whole, to be much diminished rather than increased by allowing some such practice, which approximates the remedies of equity in similar cases. There is nothing in the statute which forbids it, and we are of opinion that no legal objection exists to such a course of procedure.

Of course the committee ought to be satisfied that the offers, or bids, are made in good faith; and the money should be paid, or satisfactory security for its payment furnished, before a final judgment distributing the shares is entered up.

We are of opinion that this report should be recommitted to the same committee, unless some further objection to their competency is shown, with instructions to consider the offers of either party for a choice of shares, provided such offers are accompanied with satisfactory security for their performance.

*Report recommitted.*