Belknap County Probate Court
No. 2004-247

DENA DELUCCA & a.

v.

ROLAND H. DELUCCA

Argued: January 12, 2005
Opinion Issued: April 8, 2005

*Cleveland, Waters and Bass, P.A.*, of Concord (*William B. Pribis* on the brief and orally), for the petitioners.

*Fitzgerald, Sessler & Nichols, P.A.*, of Laconia (*Shawn M. Tanguay* on the brief and orally), for the respondent.

NADEAU, J. The petitioners, Dena DeLucca, Dean DeLucca, Toni Cushman and Lori Fasshauer, appeal an order from the Belknap County Probate Court (*Hampe*, J.) to partition property by selling it and dividing the proceeds. We vacate and remand.

The record supports the following facts. The petitioners sought partition of two parcels of land. One parcel contains 23.14 acres and is located on the southerly side of Crockett Road ("southerly lot"); the other contains 28.97 acres and is located on the northerly side of Crockett Road ("northerly lot"). Both lots were formerly owned by Mildred F. DeLucca. Title to the property passed by will to the respondent, Roland H. DeLucca, and the petitioners. Each petitioner holds an undivided 12.5% interest in the property as a tenant in common and the respondent holds an undivided 50% interest as a tenant in common. The southerly lot contains a garage building, which is currently used by the respondent's son and grandsons to work on their race cars. The petitioners argue that the respondent has allowed the southerly lot to be used in a manner detrimental to the property. The petitioners asked the court to partition the land by giving them the northerly lot and respondent the southerly lot. The petitioners argued that both lots were of equal value and that in any event, any

deterioration of the southerly lot was the respondent's fault. The trial court found the lots were not of equal value and ordered that they be sold and the proceeds divided among the parties.

The petitioners contend the trial court erred: (1) when it found that the northerly lot was of significantly greater value; and (2) in ruling that it could order a sale of property without finding that the property cannot be divided so as to give each owner his or her share or interest without great prejudice or inconvenience.

■ With respect to the first issue, the petitioners argue that at trial they introduced into evidence two separate appraisals showing both lots to be essentially of the same value, and that there was insufficient evidence for the finding that they were not. An action for partition calls upon the court to exercise its equity powers and consider the special circumstances of the case, in order to achieve complete justice. *Boissonnault v. Savage*, 137 N.H. 229, 232 (1993). With that in mind, we will not disturb the probate court's decree unless it is unsupported by the evidence or plainly erroneous as a matter of law. *See* RSA 567-A:4 (1997); *In re Estate of Locke*, 148 N.H. 754, 755 (2002). We review the record of the proceedings before the probate court to determine if the findings, as made by the probate judge, could be reasonably made, given the testimony presented. *In re Buttrick*, 134 N.H. 675, 676 (1991). In reviewing this record we are guided by the rule that "the trier of fact is in the best position to measure the persuasiveness and credibility of evidence and is not compelled to believe even uncontroverted evidence." *Id.* (quotation and brackets omitted). Furthermore, "it was within the discretion of the trial judge to resolve conflicts in the evidence. The trial court could accept or reject such portions of the evidence presented as he found proper, including that of the expert witnesses." *Tennessee Gas Pipeline Co. v. Town of Hudson*, 145 N.H. 598, 602 (2000) (quotation and citation omitted). Thus, we defer to the trial court's resolution of conflicts in the testimony, the credibility of witnesses, and the weight to be given evidence. *Cook v. Sullivan*, 149 N.H. 774, 780 (2003).

A review of the record reveals the evidence was sufficient to sustain the probate court's ruling that the northerly lot was worth significantly more than the southerly lot. During trial there was testimony by Joanna Chase, a licensed appraiser, that if the properties were considered single lots, they would be of approximately the same value. However, she was unable to testify as to the current highest and best use of the lots. Dean M. Clark, a land surveyor, testified that the southerly lot could be subdivided into

two lots. He testified the northerly lot could be subdivided into five lots, if a short road and cul-de-sac were constructed. The trial court found, based upon the expert testimony and his actual observation of the lots, that the northerly lot was significantly more valuable than the southerly lot.

The petitioners argue the trial court erred when it relied upon a hypothetical subdivision plan that did not establish an actual value for the subdivided lots and when it applied the "highest and best use" valuation standard in determining the lots had disparate values. However, we "have never attempted to tie the fact finder's hands with a rigid fair market value formula in the absence of legislative directive." *Tennessee Gas Pipeline Co.*, 145 N.H. at 602 (brackets omitted). Here, there is no legislative directive and thus it was not error for the trial court to apply the highest and best use standard. In addition, the valuation of property is a question of fact for the trial court, and we will not overturn its finding unless it is clearly erroneous or unsupported by the evidence. *See Rye Beach Country Club v. Town of Rye*, 143 N.H. 122, 127 (1998). We also note that the trial court had a view of the property, and the findings of the trial court are within its sound discretion, particularly when a view has been taken. *See Husnander v. Town of Barnstead*, 139 N.H. 476, 478-79 (1995). Therefore, because the trial court's valuation is not lacking in evidential support, we do not find it erroneous as a matter of law.

The second issue presents a question of statutory interpretation. This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Remington Invs. v. Howard*, 150 N.H. 653, 654 (2004). In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* Where the language of a statute is clear on its face, its meaning is not subject to modification. *Id.* Unless we find that the statutory language is ambiguous, we need not look to legislative intent. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *In the Matter of Watterworth & Watterworth*, 149 N.H. 442, 445 (2003). We review the probate court's interpretation of a statute *de novo*. *See Remington Invs.*, 150 N.H. at 654.

We begin by examining the relevant provisions of RSA chapter 547-C. RSA 547-C:25 (Supp. 2004) provides:

> When the proceedings are pending, if it is alleged in the petition that the property is so situated or is of such a nature that it cannot be divided so as to give each owner his or her share or

interest without great prejudice or inconvenience and the court so finds, the court may order it to be sold and the proceeds from the sale to be divided among the owners according to their respective rights, titles, or interests, and may make all other orders that may be necessary to cause such sale and the distribution of the proceeds, as a court of equity may do in like cases.

RSA 547-C:30 (Supp. 2004) further provides: "Proceedings under this chapter shall be remedial in nature. The provisions of this chapter are to be liberally construed in favor of the exercise of broad equitable jurisdiction by the probate court in any proceeding pending before it."

Recently, we held that an action to partition property calls upon the court's equity powers, so that complete justice may be done by such means as are appropriate to the special circumstances and situation of each particular case. *Pedersen v. Brook*, 151 N.H. 65, 67 (2004). Furthermore, determination of the question whether a physical division can be made without great prejudice or inconvenience is required before a sale of the whole can be ordered. *Abbott v. Abbott*, 77 N.H. 601, 602 (1915). Additionally, we have stated that probate courts have full authority to try issues relating to partition of real estate. *Pedersen*, 151 N.H. at 67.

■ In determining whether lands may be partitioned without great prejudice or inconvenience, the court should consider the fact that the value of the land as a whole may be substantially greater than the aggregate value of its parts. *Leavitt v. Benzing*, 97 N.H. 118, 120 (1951). In addition, before ordering sale, the court should consider such offers as may be made by the several owners for a choice of the parcels into which the premises are divided. *Timon v. Moran*, 54 N.H. 441, 443 (1874).

We note that the "primary method of partition is by division of the land itself by metes and bounds among the tenants in common." *Mello v. Mello*, 76 N.E.2d 9, 10 (Mass. 1947). Real property is unique and thus the trial court must look at each parcel individually and only order sale if it is determined that the property is so situated or is of such a nature that it cannot be divided so as to give each owner his or her share or interest without great prejudice or inconvenience. *See* RSA 547-C:25.

> Since a partition sale results in the conversion of real estate into money, possibly against the will of an owner, it should not be ordered unless the necessity for it is clearly established. The burden of proof to establish the necessity for a partition sale,

rather than a partition in kind, is on the party alleging the necessity and advisability of such sale. . . . A determination that a sale is necessary, if not based on the consent of the parties or on findings grounded in competent evidence, will not support an order of sale.

59A AM. JUR. 2D *Partition* § 134 (2003) (footnotes omitted).

■ According to the plain language of RSA 547-C:25, the probate court has the authority to order the sale of property and divide the proceeds. Because we construe RSA 547-C:25, however, to mean that each lot must also be assessed separately, we hold that the trial court erred by limiting its assessment only to the two lots together. That error resulted in the order that the lots had to be sold because they were not of the same value and could not be awarded individually to each party. Under the statute a determination also should have been made as to whether each lot could be divided separately without resulting in great prejudice or inconvenience. On remand, the trial court must determine whether each lot individually can be divided without causing such prejudice or inconvenience. If either lot could be divided, then partition of that lot should be ordered. If neither lot can be so divided, the court should determine whether the properties together can be divided so as to give each owner his or her share or interest without great prejudice or inconvenience. If not, then sale of the lots may be ordered.

■ While the court may order sale of the properties if partition cannot be accomplished by agreement or upon conditions set by the court, we hold that under the statute the trial court must make an *express* finding that the property cannot be divided without causing great prejudice or inconvenience before ordering sale.

The trial court found that the respondent may have potentially caused, or allowed to be caused, contamination of the southerly lot and that any loss due to such hazardous waste would be the responsibility of the respondent. RSA 547-C:29 (Supp. 2004), provides that "waste or other detriment caused to the property by the actions or inactions of the parties" should be considered by the court. On remand, the trial court should consider any contamination in its determinations. The court should also

determine the extent to which any conduct of the respondent should affect his share.

*Vacated and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.