NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Rockingham
No. 2015-0255

RENEE M. BROOKS

v.

STEVEN ALLEN

Argued: January 13, 2016
Opinion Issued: April 1, 2016

Bryan J. Kerman, of Methuen, Massachusetts, by brief and orally, for the petitioner.

Kenneth P. Doherty, of Lawrence, Massachusetts, by brief and orally, for the respondent.

CONBOY, J. The respondent, Steven Allen, appeals an order of the Superior Court (Wageling, J.) granting a petition to partition real property and for other equitable relief filed by the petitioner, Renee M. Brooks, and denying the respondent's cross-petition to partition. We affirm.

The relevant facts follow. The petitioner and the respondent lived together for approximately twenty years from 1993 to 2013, except for an 18-month period of separation in 2006-2007. They are the parents of a son who was born in 1996.

The parties met in 1991.  In 1993, the respondent purchased a two-family apartment building in Haverhill, Massachusetts.  The deed and mortgage were in the respondent's name only.  The parties resided in one of the apartments and rented the other; the rental income covered the mortgage payments.  The trial court found that both the petitioner and the respondent "performed renovations and upkeep on the property, with funding for the repairs and maintenance coming largely from [the respondent], aided by the proceeds from the mortgage."  Both parties contributed financially to the household, with the respondent providing the majority of the income.

In 1995, the parties acquired land in Merrimac, Massachusetts as joint tenants, intending to build a house for themselves.  That project never came to pass, however, and they sold the property in 1997.

In 1998, the parties sold the Haverhill property and purchased a house in Atkinson, New Hampshire (the Atkinson property).  The deed and mortgage were in the respondent's name only.  The trial court found that the money for the down payment on the Atkinson property came from the sales of the Merrimac land and the Haverhill house, and the parties' savings.  The court also found that "[the respondent's] savings far exceeded the savings contributed to the down payment by [the petitioner] as [she] had remained at home during this time frame to care for their son."

From 1998 through early 2013, the parties lived together in the Atkinson home.  The trial court found that it was their plan "to remain together and continue to build on the financial foundation they started in 1993."  The court also found that "[d]uring this time frame, [the petitioner] had returned to school and obtained a nursing degree allowing her to gain employment as a registered nurse," and that "both parties contributed to the maintenance of the Atkinson property and the regular functioning of the household, sharing the responsibility of the expenses of the family unit."

In 2003, the parties, as joint borrowers, entered into a home equity credit agreement secured by a mortgage on the Atkinson property.  The November 1998 mortgage in the respondent's name alone was discharged.  Under the terms of the credit agreement, each party was individually liable for the full amount of the credit line.  The respondent, however, was in control of the credit line and he alone withdrew funds from it.

In 2007, the parties, as joint tenants, purchased a property in Northwood, New Hampshire (the Northwood property).  The respondent obtained a mortgage on the property in his name only.  The trial court found that at the time they purchased the Northwood property, "the parties agreed that [the respondent] would pay the mortgage and expenses on the Northwood property and the 2003 line of credit on the Atkinson property while [the petitioner] would be responsible for all of the other expenses of the Atkinson

2

property (real estate taxes, utilities, and groceries)," and that this agreement continued until the parties separated in 2013.  The trial court also found that the Northwood property, a seasonal home on a lake, "was in disrepair at the time of purchase requiring the parties to undertake substantial renovations to make it habitable.  Both parties assisted in this task with [the respondent] doing the majority of the physical labor."

The parties refinanced the Northwood property several times.  In 2008, they jointly obtained a mortgage, and discharged the 2007 mortgage that was in the respondent's name only.  In 2009, they jointly obtained a mortgage, and discharged the 2008 mortgage.  In 2010, they completed a number of loan applications, either individually or jointly, for a mortgage on the Northwood property.  On the applications, the respondent represented that his monthly income was $1,413 and that he did not own any property.  The petitioner represented that her monthly income was $8,036 and that she owned the Northwood property, the Atkinson property, and a property in Haverhill, Massachusetts.  The parties thereafter jointly executed a mortgage secured by the Northwood property, and discharged the 2009 mortgage.  In 2012, the parties again sought refinancing, with the petitioner completing the loan application in her name only.  As a result of this refinancing, the 2010 mortgage was discharged.

In 2012, the parties also obtained another home equity line of credit on the Atkinson property as joint borrowers with each party individually liable for the full amount.  The respondent, however, was in full control of the credit line and he alone withdrew funds from it.  The parties executed a new mortgage secured by the Atkinson property, and the 2003 mortgage was discharged.

In 2013, the petitioner moved out of the Atkinson property when she received a letter from the respondent's attorney notifying her that if she did not leave she would be evicted.  Upon the advice of his attorney, the respondent withdrew the remaining balance of approximately $59,000 on the 2012 Atkinson credit line so that the petitioner could not access those funds.

The trial court found that the respondent's yearly mortgage payments on the Northwood property for the years 2007 through 2012 were, respectively: $14,972; $31,392; $24,295; $25,681; $19,728; and $23,624.  For those same years, the trial court found that, "[o]f note, [the respondent's] yearly total gross income" reported on his federal tax returns was, respectively:  $27,606; $16,963; $41,721; $27,908; $24,271; and $34,302.  The trial court found that the petitioner's yearly total gross income reported on her federal tax returns was:  $47,800 in 2005; $56,209 in 2006; $57,267 in 2007; $70,143 in 2008; $80,861 in 2009; $69,025 in 2010; $69,055 in 2011; and $69,956 in 2012.

In March 2013, the petitioner filed a two-count petition to partition.  In count one, the petitioner requested that the trial court order that the

Northwood property be sold pursuant to RSA 547-C:25 (2007), that the net proceeds from the sale be distributed equally between the parties, and that the court "grant such further relief as is fair and just." In count two, the petitioner requested, among other things, that the trial court "[e]quitably determine" each party's interest and rights in the Atkinson property, each party's liability for any debts or loans jointly entered into, and each party's liability for any debts or loans entered into by the petitioner, whose funds were used by the respondent "individually, or by the parties jointly, to invest in or maintain real estate." The respondent cross-petitioned, requesting that the trial court assign the Northwood property to him, and dismiss count two of the petitioner's petition.

A bench trial was held in February 2015. Subsequently, the court issued an order setting forth the respective interests of the parties. Regarding the Northwood property, the trial court found that the fair market value was $270,000 and, as of January 2015, it had a mortgage of $94,477.02. Accordingly, the court determined the equity to be $175,522.98, of which the petitioner was entitled to $70,209.19. Regarding the Atkinson property, the trial court found that as of December 2014, the fair market value was $362,000 and, as of the time of the parties' separation, it had a mortgage balance of $236,457. Accordingly, the court determined the equity to be $125,543, of which the petitioner was entitled to $50,217. The court ordered the respondent either to sell the Northwood and Atkinson properties, or to refinance or otherwise discharge the mortgages, and to pay the petitioner $70,209.19 for her interest in the Northwood property and $50,217 for her interest in the Atkinson property.

On appeal, the respondent asserts that the trial court erred in "determining the equitable rights of unmarried parties to a particular jointly owned property in a partition action pursuant to RSA 547-C," and in "determining the equitable rights of unmarried cohabitants to a particular individually owned property in the absence of express terms of a joint venture agreement." He argues that the trial court's order was "divorce like" because it "treated payments made solely by [the respondent] as payments made jointly as if the money came from one domestic partnership of the parties instead of using the available evidence showing who contributed what and how much toward each property as intended by a proper application of the controlling statute." He asserts that the court "simply used the fair market value and mortgage balance to determine how much money should be apportioned as equity of the domestic partnership" and then "entered a sixty-forty percentage split of said equity without fully explaining how or why it came up with that formula." The respondent further argues that "some of the trial judge's findings of fact were not supported by the evidence and were so plainly erroneous that such findings could not reasonably be made."

4

We review the trial court's decision to grant equitable relief for an unsustainable exercise of discretion. Conant v. O'Meara, 167 N.H. 644, 649 (2015); see Chase v. Ameriquest Mortgage Co., 155 N.H. 19, 24 (2007) ("We will uphold a trial court's equitable order unless it constitutes an unsustainable exercise of discretion."). In doing so, we determine "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." State v. Lambert, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). "The court has broad and flexible equitable powers which allow it to shape and adjust the precise relief to the requirements of the particular situation." Chase, 155 N.H. at 24 (quotation omitted). "A court of equity will order to be done that which in fairness and good conscience ought to be or should have been done. It is the practice of courts of equity . . . to administer all relief which the nature of the case and facts demand." Id. (quotation omitted). "The party asserting that a trial court order is unsustainable must demonstrate that the ruling was unreasonable or untenable to the prejudice of his case." Foley v. Wheelock, 157 N.H. 329, 332 (2008). We will not disturb the findings of the trial court "unless they lack evidentiary support or are legally erroneous." In the Matter of Henry & Henry, 163 N.H. 175, 178 (2012).

Partition actions are governed by RSA chapter 547-C, which vests the trial court with broad power to determine the rights of those with an interest in real property. See DeLucca v. DeLucca, 152 N.H. 100, 102 (2005) ("An action for partition calls upon the court to exercise its equity powers and consider the special circumstances of the case, in order to achieve complete justice."). "Partition is equitable in nature, and the jurisdiction of the court extends to adjustment of conflicting claims in a fair division of the proceeds in the light of the attendant circumstances." Bartlett v. Bartlett, 116 N.H. 269, 272 (1976).

RSA 547-C:1 provides that "[a]ny person owning a present undivided legal or equitable interest in real or personal property . . . shall be entitled to have partition or division in the manner hereinafter provided." RSA 547-C:1 (2007) (emphasis added). "Upon petition . . . , the court may cause any property to be partitioned or divided and awarded or assigned in accordance with procedures described in this chapter." RSA 547-C:2 (Supp. 2015). The trial court "shall have full power to determine the respective interests of all the parties." RSA 547-C:10 (2007).

The statute sets forth several factors the court may consider in determining any award:

> In entering its decree the court may, in its discretion, award or assign the property or its proceeds on sale as a whole or in such portions as may be fair and equitable. In exercising its discretion in determining what is fair and equitable in a case before it, the court may consider: the direct or indirect actions and

5

contributions of the parties to the acquisition, maintenance, repair, preservation, improvement, and appreciation of the property; the duration of the occupancy and nature of the use made of the property by the parties; disparities in the contributions of the parties to the property; any contractual agreements entered into between the parties in relation to sale or other disposition of the property; waste or other detriment caused to the property by the actions or inactions of the parties; tax consequences to the parties; the status of the legal title to the property; and any other factors the court deems relevant.

RSA 547-C:29 (2007) (emphasis added). The statute's provisions "are to be liberally construed in favor of the exercise of broad equitable jurisdiction by the court in any proceeding pending before it." RSA 547-C:30 (Supp. 2015).

Here, after reciting the factors set forth in the statute, the trial court applied them to the evidence presented at trial. The court found that

the parties intended their purchasing and maintaining of real estate to be for the benefit of both, as a partnership – that is, as domestic partners. The parties' relationship was not of short duration, nor was it one based solely on economic convenience as evidenced by their manner of living as a family. The Court finds that both parties contributed their respective resources to the domestic partnership throughout the course of the relationship. The Court further finds that [the respondent] was able to contribute more financial and physical resources than [the petitioner] and that his contribution was more consistent than [the petitioner's]. For this reason, the Court will not award a 50-50 split of the property/interest in the property subject to the partition action, but in general terms hereby orders a 60-40 split with [the respondent] receiving the larger share. However, [the respondent] shall be held responsible to solely pay $59,077.92 which is a portion of the balance of the equity line of credit remaining on the Atkinson property.

The respondent argues that in determining the parties' equitable rights, the trial court erred in awarding a "divorce-like" settlement. The respondent asserts that the trial court's decision "is a departure from many holdings of this Court over the last thirty-five years that unmarried parties are not entitled to divorce-like remedies until and unless the legislature determines otherwise." The cases cited by the respondent, however, are not based upon equitable distribution of property pursuant to RSA chapter 547-C, and are otherwise distinguishable.

In Joan S. v. John S., 121 N.H. 96 (1981), the parties "lived together without benefit of marriage" for approximately 15 years. Joan S., 121 N.H. at 97. Upon the end of the relationship, the woman filed a petition requesting the trial court to decree the relationship of the parties a "void marriage," and impose upon the defendant "alimony, child support, property division and injunctions." Id. (quotation omitted). We affirmed the trial court's dismissal of the petition on the ground that New Hampshire "is a jurisdiction which does not recognize the validity of common-law marriages." Id. at 98 (quotation omitted). We noted, however, that our refusal to apply the divorce statute to the dissolution of non-marital living arrangements does not prevent equitable adjustment of the rights of the parties, that either party may bring a bill in equity or petition for declaratory judgment to determine equitably the rights of parties in particular property, and that a court will enforce an action in contract "to the extent that it is not founded upon the consideration of meretricious sexual relations." Id. at 99. We further concluded that the plaintiff's request that the real estate be partitioned was properly dismissed for the plaintiff's failure to comply with the provisions of the statute. Id.

In Tapley v. Tapley, 122 N.H. 727 (1982), we declined to allow recovery for "domestic services" under an implied contract or in quantum meruit, adopting the view of other jurisdictions that have concluded that until their legislatures determine otherwise, they will not recognize a contract which is implied from the rendition of "housewifely services." Tapley, 122 N.H. at 729 (quotation omitted). We stated that our holding was "not meant to limit recovery for business and personal services, other than normal domestic services, rendered between unmarried cohabitants," noting that in Humiston v. Bushnell, 118 N.H. 759, 761-62 (1978), we permitted an unmarried individual to recover from her cohabitant's estate her share of a joint farming venture on a partnership theory. Id. at 730-31.

In In the Matter of Mallett & Mallett, 163 N.H. 202 (2012), we considered whether the family division lacked subject matter jurisdiction over claims between unmarried parties who have children together "to partition jointly owned real estate, order one parent to provide health insurance coverage to the other parent, or adjudicate legal or equitable claims to assets and claims for compensation for services rendered." In the Matter of Mallett, 163 N.H. at 207, 209. We concluded that pursuant to the overall scheme of the relevant statutes, "[w]hile unmarried parties are expressly within the family division's jurisdiction for purposes of child-related matters, this statutory scheme plainly restricts all divorce remedies and property distribution to married couples," and that "[s]hould the legislature determine that 'unwed families' should have the opportunity to have all their claims . . . heard in the family division, it has the power to grant that jurisdiction to the family division." Id. at 209.

Here, the petitioner did not seek a "divorce-like" remedy; rather, she sought, under RSA chapter 547-C, an equitable determination of her rights in

two parcels of real property. In determining the interests of the parties, the trial court took into consideration the factors it deemed relevant, as it is authorized to do under the statute. See RSA 547-C:29. The trial court's characterization of the parties' relationship as "domestic partners" did not alter either the underlying nature of the petition, or the propriety of the court's analysis. The respondent asserts that because the trial court stated that it would not award a "50-50" split of the interest in the properties, it must have been treating this petition as one for divorce because the partition statute, unlike the divorce statute, contains no such presumption of equal entitlement to property. However, the trial court's reference to a "50-50" split was tied to its consideration of the factors set forth in the partition statute, whereby, in determining what is fair and equitable, it may consider "the direct or indirect actions and contributions of the parties to the acquisition, maintenance, repair, preservation, improvement, and appreciation of the property," as well as "disparities in the contributions of the parties to the property." Id. Here, because the evidence demonstrates that the respondent's contributions were greater than the petitioner's, the trial court acknowledged that the equitable interests in the properties were not equal and thus it would order a "60-40 split with [the respondent] receiving the larger share."

The respondent also argues that the trial court made three erroneous factual findings: (1) that the parties jointly purchased the property in Merrimac; (2) that the parties' savings formed part of the down payment for the Atkinson property; and (3) that the November 1998 Atkinson mortgage in the respondent's name only was paid off by the 2003 line of credit. He asserts that these factual findings were "not supported by the evidence and were so plainly erroneous that such findings could not reasonably be made."

Although there was conflicting evidence presented at trial, as the trier of fact, the trial court was "in the best position to measure the persuasiveness and credibility of evidence and [was] not compelled to believe even uncontroverted evidence." DeLucca, 152 N.H. at 102 (quotation omitted). "[I]t was within the discretion of the trial judge to resolve conflicts in the evidence. The trial court could accept or reject such portions of the evidence presented as [it] found proper." Id. (quotation omitted). We "defer to the trial court's resolution of conflicts in the testimony, the credibility of witnesses, and the weight to be given evidence." Id. We have reviewed the record and conclude that the trial court's findings are supported by the evidence and are not erroneous as a matter of law. Accordingly, we will not disturb the court's findings. See id.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.