NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Merrimack
No. 2018-0025


EDWARD F. HAYES, JR., TRUSTEE OF THE SURVIVOR'S TRUST A C/U THE HAYES FAMILY TRUST DATED JANUARY 20, 2000

v.

JAMES J. CONNOLLY, TRUSTEE OF THE ANN D. CONNOLLY LIVING TRUST

Argued: November 27, 2018
Opinion Issued: March 29, 2019


Cleveland, Waters and Bass, P.A., of Concord (David W. Rayment and Mark S. Derby on the brief, and Mr. Rayment orally), for the petitioner.


Gallagher, Callahan & Gartrell, P.C., of Concord (Samantha D. Elliott and Robert J. Dietel on the brief, and Ms. Elliott orally), for the respondent.


BASSETT, J. The petitioner, Edward F. Hayes, Jr., as trustee of the Survivor's Trust A, certified under the Hayes Family Trust dated January 20, 2000 (Hayes Trust), appeals the order of the Superior Court (Kissinger, J.), in an action to partition real property. The property at issue is owned in equal shares by the respondent, James J. Connolly, co-trustee of the Ann D. Connolly Living Trust (Connolly Trust), and the Hayes Trust. The Hayes Trust argues that the trial court erred by specifically enforcing the terms of a contract the parties had abandoned. It further asserts that the trial court erred in ordering a private sale based on appraisals because the Hayes family needed to

maximize the liquidation value of the property. Therefore, it argues that the only "reasonable and fair remedy . . . was [a] private auction." The Hayes Trust further contends that the court erred in impermissibly penalizing it for seeking partition, and by excluding certain testimony regarding a witness's interest in purchasing the property. We affirm.

The property, a seasonal residence on Lake Sunapee, has been owned by the parties' families since 1953. In 1992, owners from the two families entered into an agreement addressing how the liabilities and expenses of the property would be shared, and what would occur "[u]pon the dissolution, or the death of either of the [owners]." The Hayes family conveyed its one-half interest in the property to the Hayes Trust in 2000 and the Connolly family conveyed its one-half interest to the Connolly Trust in 2004.

In 2015, Edward Hayes, the successor trustee of the Hayes Trust, sought to liquidate the trust's interest in the property because the trust beneficiaries no longer had the financial ability to maintain the property. The Hayes family asked Edward's son, Michael Hayes, to represent the family's interest in negotiations with the Connolly family, which appointed James Connolly as their representative. Michael stated that the Hayes Trust did not wish to continue "joint ownership or usage," and that he, acting as an individual, wished to purchase the entire property. The Connolly family did not wish to sell their interest, preferring that the property continue to be shared in accordance with the status quo. After negotiations reached an impasse, the Hayes Trust petitioned the court to partition the property, asking that the court "(1) Order the sale of the Property either to Mike personally at a market value to be determined by a third party appraiser to be appointed by the Court; or (2) . . . order the Property to be placed on the market and sold at the highest and best price obtainable . . . ."

During the course of litigation, the Connolly Trust argued that the agreement from 1992 is an enforceable contract that gives it "an express right to purchase the Property and an equitable procedure to determine the purchase price." The 1992 Agreement provides that:

> Upon the dissolution, or the death of either of the [owners], the other or the surviving [owner] shall have the right to purchase the interest of the deceased [owner] at a price agreed upon by the [owners] . . . provided the decedent's lawful heirs . . . do not desire to continue the decedent's ownership of the subject property. This Agreement shall be binding on the decedent's heirs under the aforementioned provisions. If the [owners] cannot agree on the purchase price, then the [owners] shall each select one appraiser or the legal representative of the deceased [owner] shall select one appraiser, and these two shall agree, if possible, in good conscience, on the value of the interest of the dissolving and/or the

2

deceased [owner], and such agreed value shall be binding and conclusive on all parties hereto or claiming hereunder. But if these two are unable to agree, they shall select a third appraiser and then the decision of any two of the appraisers shall be binding and conclusive on all Parties hereto or claiming hereunder.

The court observed that "no member of either the Connolly or Hayes families raised the 1992 Agreement until well after the initiation of this case" and concluded that, because the original signatories demonstrated a mutual lack of a commitment to be bound by its terms, the 1992 Agreement was not an enforceable contract.

Following a bench trial and a view, the trial court concluded that the property was not suited for physical partition. Then, "taking into account both families' strong emotional ties to the Property and The Hayes Family Trust's need to liquidate its assets," the trial court awarded the Hayes Trust's interest in the property to the Connolly Trust in exchange for half of the property's fair market value. The trial court ordered that fair market value be determined following "a process similar with that set out in the 1992 Agreement." The court reasoned that "[a]lthough the 1992 Agreement does not constitute an enforceable contract, it still suggests that at one time the Hayes and Connolly families believed its process for ascertaining the value of the Property was fair and equitable." Accordingly, the trial court ruled that the property be partitioned and held that, if the parties could not agree on a price, each would select an appraiser to determine the fair market value. If the two appraisers disagreed, a third appraiser would be selected by the two appraisers, and agreement between any two of the three appraisers would establish the fair market value. This appeal followed.

Partition actions are governed by RSA chapter 547-C, which vests the trial court with broad power to determine the rights of those with an interest in real property. See RSA 547-C:30 (Supp. 2018). Partition proceedings are "remedial in nature" and provisions of RSA chapter 547-C "are to be liberally construed in favor of the exercise of broad equitable jurisdiction." Id. "In entering its decree [on a petition to partition] the court may, in its discretion, award or assign the property or its proceeds on sale as a whole or in such portions as may be fair and equitable." RSA 547-C:29 (2007). The statute sets forth a list of factors the court "may consider" including the parties' actions relative to the property, "any contractual agreements entered into between the parties in relation to sale or other disposition of the property," and "any other factors the court deems relevant." Id.

"An action for partition calls upon the court to exercise its equity powers and consider the special circumstances of the case, in order to achieve complete justice." DeLucca v. DeLucca, 152 N.H. 100, 102 (2005). "The court has broad and flexible equitable powers which allow it to shape and adjust the precise relief

to the requirements of the particular situation." Brooks v. Allen, 168 N.H. 707, 711 (2016) (quotation omitted). "A court of equity will order to be done that which in fairness and good conscience ought to be or should have been done. It is the practice of courts of equity . . . to administer all relief which the nature of the case and facts demand." Id. (quotation omitted). "[T]he jurisdiction of the court extends to adjustment of conflicting claims in a fair division of the proceeds in the light of the attendant circumstances." Id. (quotation omitted).

We will uphold a trial court's equitable order unless it constitutes an unsustainable exercise of discretion. Id. In doing so, the question is "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." State v. Lambert, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). "The party asserting that a trial court order is unsustainable must demonstrate that the ruling was unreasonable or untenable to the prejudice of his case." Foley v. Wheelock, 157 N.H. 329, 332 (2008). We will not disturb the findings of the trial court unless they lack evidentiary support or are legally erroneous. Brooks, 168 N.H. at 711. Indeed, our review of the trial court's decision is limited: we will not substitute our judgment for that of the trial court unless the findings and rulings are unsupported by the evidence or are erroneous as a matter of law. Ryan v. Perini Power Constructors, Inc., 126 N.H. 171, 173 (1985). Nor will we reweigh the equities. In the Matter of Heinrich & Heinrich, 164 N.H. 357, 365 (2012).

The Hayes Trust first argues that the trial court erred "when it found that the parties had abandoned the 1992 Agreement, and then specifically enforced the terms of the abandoned contract under the guise of a remedy upon partition." The Connolly Trust counters that even though the "trial court did grant a remedy similar to that which is specified in the prior 1992 agreement," it was not enforcing the abandoned contract, but rather was ordering "a common-sense, equitable remedy, and one which even the petitioner acknowledged was a fair approach."

Interpretation of a trial court order presents a question of law for this court. In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008). Here, we do not construe the court's order as specifically enforcing the 1992 Agreement. Rather, the trial court, having found that "physical partition is not a viable option," concluded that the "fairest solution" was to award the Hayes Trust's interest in the property to the Connolly Trust in exchange for half of the property's fair market value. Indeed, at trial, Edward Hayes, Jr., the Hayes Trust's trustee, acknowledged that "one fair method" for "dealing with this type of situation" was reflected by the 1992 Agreement. We do not see how a method of partition becomes unfair, unreasonable, or inequitable merely because parties are no longer contractually bound to use that method. To adopt the Hayes Trust's argument, and conclude that the trial court could not order this method of partition, would in effect preclude a trial court from ordering specific relief merely because the parties once had agreed to those

4

very terms. Such an outcome would be illogical. Moreover, it would be contrary to the broad terms of the partition statute, which empowers a court to enter a decree "as may be fair and equitable" after considering "any contractual agreements entered into between the parties in relation to sale or other disposition of the property," and "any other factors the court deems relevant." RSA 547-C:29. We conclude that the Hayes Trust has failed to demonstrate that the trial court's ruling was unreasonable or untenable.

The Hayes Trust next argues that the trial court erred when it ordered a private sale based on fair market value as determined by appraisals, instead of a private auction or a public listing and sale. It asserts that "[t]he fairest remedy was a private auction among the Hayes and Connolly family members" because it "guarantees that the Property with sentimental value will not be sold outside the family, and it will fairly compensate the selling party for parting with real property to which he or she may have an emotional attachment." It further contends that a private sale based on fair market value was unreasonable because it discounted the Hayes Trust's need to maximize the return on its interest in the property.

RSA 547-C:25 provides that if a court finds that property cannot be divided, "the court may order it to be sold and the proceeds from the sale to be divided among the owners . . . and may make all other orders that may be necessary to cause such sale and the distribution of the proceeds, as a court of equity may do in like cases." RSA 547-C:25 (2007). The trial court, after finding that "physical partition is not a viable option," declined to order that the value of the property be established by the method proposed by the Hayes Trust. It reasoned that it would be "grossly inequitable to require the Connolly Trust to pay a premium over fair market value." The trial court, although recognizing the Hayes Trust's interest in maximizing the value of the property, was not convinced "that the beneficiaries' financial need is so great that it justifies forcing the Connolly family to possibly choose between selling their well-beloved interest in the Property or paying more than fair market value . . . merely in order to maximize the value of the Property to a marginal degree." Even if the method of valuation proposed by the Hayes Trust would have also been an equitable way to partition the property, it has not established that the method selected by the trial court was unreasonable or untenable. See Foley, 157 N.H. at 332. Accordingly, we conclude that the trial court sustainably exercised its discretion when it ordered that the property be partitioned by private sale based on its appraised or agreed upon fair market value. See Brooks, 168 N.H. at 711.

To the extent that the Hayes Trust is also arguing that the trial court order is unsustainable because, by "definition and common sense, it is not possible for a dollar amount to be 'grossly inequitable' and 'marginal' at the same time," we disagree. By our interpretation, the trial court did not premise its conclusion on the size of the premium, but rather on the existence of a premium. The trial court merely made the determination that equity does not

require leveraging the Connolly family's emotional attachment to the property to set a price higher than fair market value. We conclude that the Hayes Trust has failed to demonstrate that this ruling was unreasonable or untenable.

The Hayes Trust next contends that the trial court "[i]mpermissibly [p]enalized" it for seeking partition. This argument is based upon the Hayes Trust's interpretation of a statement in the trial court's order: "considering [the Hayes Trust] alone desires to change the family sharing arrangement that has been in place for decades, . . . it would be grossly inequitable to require the Connolly Trust to pay a premium over fair market value to retain its interest in the Property." We, however, do not construe the order as penalizing the Hayes Trust for filing suit. See Salesky, 157 N.H. at 702. Rather, the court accurately summarized the parties' respective positions, noting that the Hayes Trust sought to change the longstanding arrangement, while the Connolly Trust sought to maintain the status quo. The statement is neither erroneous nor punitive.

Finally, the Hayes Trust argues that the trial court erred when it excluded testimony from Michael Hayes regarding his interest in purchasing the property. We review the trial court's rulings on admissibility of evidence under the unsustainable exercise of discretion standard. McLaughlin v. Fisher Eng'g, 150 N.H. 195, 197 (2003). We will not disturb the court's ruling unless a party establishes that it is clearly untenable or unreasonable to the prejudice of its case. Id. The Hayes Trust argues that Michael's testimony was relevant "to support the proposition that there was a good supply of ready, willing, and able buyers willing and able to pay a premium for the Property." However, the proposition that those buyers exist does not appear to have been in dispute. On the contrary, the court implicitly found that such a class of buyers could force the Connolly Trust to choose between selling "their well-beloved interest in the Property or paying more than fair market value" to keep it, an outcome the court found to be "grossly inequitable." Based upon this record, we cannot conclude that the trial court's ruling to exclude the proffered testimony was untenable or unreasonable.

In sum, the record establishes an objective basis sufficient to sustain the method of partition and valuation chosen by the trial court — a private sale based on appraisals. See Brooks, 168 N.H. at 711. The Hayes Trust, having concluded that it needs to sell its interest in the property because it can no longer bear the cost of ownership, is relieved of that burden, and it will receive fair compensation. The Connolly Trust, desiring to keep its share of the property, is able to do so if it purchases the Hayes Trust's interest for a price equal to half of the property's fair market value.

Affirmed.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

6