# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0536, <u>Christopher R. Moen v. David H. Moen</u>, the court on February 12, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The respondent, David H. Moen, appeals an order of the Circuit Court (<u>Yazinski</u>, J.) granting Christopher R. Moen's petition for partition of real estate pursuant to RSA chapter 547-C. We affirm.

The following facts either were found by the trial court or are undisputed by the parties. This case involves three parcels of land in Goshen. David and one of his brothers, Richard Moen, took title to three adjacent parcels of land in Goshen in separate transactions: the Purmort lot was purchased in 1989 and consisted of 11.44 acres; the Peterson lot was purchased in 1993 and was an 100' x 100' lot; and the Stansfield lot was purchased in 1999 and consisted of 2.82 acres. The lots total approximately 14.5 acres of land. Their mother, Cathy Moen, provided funds for the last two parcels. The Purmort and Stansfield parcels were transferred to David and Richard as tenants in common, and the Peterson parcel was transferred to David and Richard as a joint tenancy.

Richard died in 2020 and his will named another brother, Christopher Moen, as a beneficiary and executor. Richard's will stated: "I give, devise and bequeath my interest in real property, including my log cabin home and three-bay garage located . . . [in] Goshen, New Hampshire, together with the contents therein, to my brother Chris R. Moen, if he shall survive me." Christopher, in his role as a devisee, filed a petition requesting that the court partition the Goshen property between him and David.

In 1998, prior to the acquisition of the Stansfield parcel, Richard contacted David to obtain his approval to merge the Purmort and Peterson lots, and, thereafter, filed paperwork with the town of Goshen to merge them. Although it is undisputed that the merger paperwork contained errors, the town approved the merger and began taxing the two parcels as one. Following the acquisition of the Stansfield parcel in 1999, the town taxed the entire property as a single lot of land. David was aware that the town was taxing the parcels as if they were merged and never objected. David acknowledges that he stopped paying taxes on the property several years ago and has contributed nothing to it since.

Both Christopher and Cathy testified that it was the intent of Richard and David, based upon numerous conversations throughout the years, that Richard would build a home on one half of the property and David would build a home on the other half. Cathy testified that she and her late husband had a subdivision plan drawn to subdivide the property in half according to David and Richard's plans. The subdivision plan was drafted and the family met with an attorney to begin the subdivision process. However, Cathy claimed that David became belligerent toward the attorney, and the meeting was terminated. The subdivision process was never completed.

Consistent with the proposed subdivision plan, Richard built a log cabin and three-car garage on his side of the property. All of the receipts involving the purchase, design, and delivery of the cabin were in Richard's name. Cathy provided funding for the log cabin kit. Christopher often helped Richard work on building the cabin. David was not part of the planning or purchase of the cabin. He testified that he contributed time and materials to the building of the cabin, but pictures David submitted of his time at the cabin were at least fifteen years old, and a neighbor testified that he had not seen David on the property in at least fifteen years.

The trial court found that "it was the intent of Richard and David to subdivide the property as it appears on the [subdivision] plan." The court found it "fair and equitable to honor the intentions of Richard and David as to the property they held as tenants in common." Accordingly, the court partitioned the property by awarding Christopher the portion of land shown as Richard's on the subdivision plan, which includes the garage and the cabin, and awarding David the portion of land shown as his on the subdivision plan. The trial court ordered the parties to proceed with the subdivision as shown on the plan. David filed a motion to reconsider, which the court denied. David now appeals the trial court's decision to this court.

Partition actions are governed by RSA chapter 547-C, which vests the trial court with broad power to determine the rights of those with an interest in real property. See RSA 547-C:30 (2019). "An action for partition calls upon the court to exercise its equity powers and consider the special circumstances of the case, in order to achieve complete justice." Hayes, Tr. v. Connolly, Tr., 172 N.H. 102, 106 (2019) (quotation omitted).

Partition proceedings are "remedial in nature" and "[t]he provisions of [RSA chapter 547-C] are to be liberally construed in favor of the exercise of broad equitable jurisdiction." RSA 547-C:30. "In entering its decree the court may, in its discretion, award or assign the property or its proceeds on sale as a whole or in such portions as may be fair and equitable." RSA 547-C:29 (2019). To determine what is fair and equitable, a court "may consider":

the direct or indirect actions and contributions of the parties to the acquisition, maintenance, repair, preservation, improvement, and appreciation of the property; the duration of the occupancy and nature of the use made of the property by the parties; disparities in the contributions of the parties to the property; any contractual agreements entered into between the parties in relation to sale or other disposition of the property; waste or other detriment caused to the property by the actions or inactions of the parties; tax consequences to the parties; the status of the legal title to the property; and any other factors the court deems relevant.

Id. On appeal:

We review the trial court's decision to grant equitable relief for an unsustainable exercise of discretion. In doing so, we determine whether the record establishes an objective basis sufficient to sustain the discretionary judgment made. The court has broad and flexible equitable powers which allow it to shape and adjust the precise relief to the requirements of the particular situation. A court of equity will order to be done that which in fairness and good conscience ought to be or should have been done. It is the practice of courts of equity to administer all relief which the nature of the case and facts demand. The party asserting that a trial court order is unsustainable must demonstrate that the ruling was unreasonable or untenable to the prejudice of his case. We will not disturb the findings of the trial court unless they lack evidentiary support or are legally erroneous.

Brooks v. Allen, 168 N.H. 707, 711 (2016) (citations, quotations, and ellipses omitted).

David argues that contrary to RSA 547-C:29, the trial court partitioned the property without considering the parties' contributions to the property. However, the trial court acknowledged that it may "consider the direct or indirect actions and contributions of the parties to the acquisition, maintenance, repair, [preservation], improvement, and appreciation of the property," which is consistent with RSA 547-C:29. Furthermore, throughout its order, the court considered and weighed the evidence, including Richard's and David's contributions to the property. It found that David and Richard acquired title to three parcels of property, but Cathy provided funds for the purchase of two of the parcels. It also found that Cathy's financial contribution to the construction of the log cabin was a gift to Richard only, not to both Richard and David. As for the construction of the cabin, David testified that he contributed to the building of the cabin, but the trial court expressly found that David's "testimony lacked credibility." Lastly, the trial court found that David stopped paying taxes on the property several years ago and has not contributed anything to the property since. These findings support the conclusion that

3

while David contributed to the acquisition of one of the parcels, he did not meaningfully contribute to the maintenance, improvement, or appreciation of the property. Accordingly, we conclude that the trial court adequately considered the factors set forth in RSA 547-C:29 and further conclude that David has failed to demonstrate that its ruling was unreasonable or untenable. See Brooks, 168 N.H. at 711.

We also disagree with David that various trial court findings are not supported by the evidence or are erroneous as a matter of law. Although there was conflicting evidence presented at the hearing, as the trier of fact, the trial court was in the best position to measure the persuasiveness and credibility of evidence and was not compelled to believe even uncontroverted evidence. Id. at 715. It was within the discretion of the trial court to resolve conflicts in the evidence, and it could accept or reject such portions of the evidence presented as it found proper. Id. We defer to the trial court's resolution of conflicts in the testimony, the credibility of witnesses, and the weight to be given evidence. Id.

David challenges the trial court's finding that Richard's interest is "the portion of the land shown as Richard's on the [subdivision] plan, which includes the garage and cabin." He argues this finding is not supported because Richard, when he died, did not have a legal interest in all of the land shown as "Richard's" on the subdivision plan. Specifically, David asserts that Richard did not have a devisable interest in the Peterson parcel because it was owned in joint tenancy and thus passed to David upon Richard's death.

The trial court concluded that the parcels were voluntarily merged, finding that after obtaining David's approval to merge the lots, Richard filed paperwork with the town to merge the parcels and that despite the inaccuracies in the paperwork, the town approved the merger and began taxing the parcels as one. David argues that the merger is not valid and did not sever the joint tenancy because Richard failed to obtain and record the written consent of the mortgage holder for one of the parcels, as is currently required by statute. See RSA 674:39-a, II (Supp. 2024). However, at the time of the merger in 1998 and the discharge of the mortgage in 1999, RSA 674:39-a did not require that the mortgage holder receive notice or provide written consent for a merger to be effective. RSA 674:39-a (Supp. 1995) (amended 2016); see Laws 2016, 327:1. Thus, the merger of the parcels did not fail for lack of notice to the mortgage holder.

We disagree with David that the merger does not show an intent to sever the joint tenancy. "The intent of the parties controls when analyzing whether a joint tenancy has been severed." Estate of Croteau v. Croteau, 143 N.H. 177, 179 (1998) (citation omitted). The Peterson parcel held in joint tenancy was only 100' x 100', while the Purmort parcel held in common was 11.44 acres. At trial, David acknowledged that he had "no idea" why this small lot was held in joint tenancy. Even if the merger was prompted by the town for tax purposes

4

as David asserts, David and Richard's voluntary merger of the smaller lot held as joint tenants with the significantly larger lot held as tenants in common reflects their intent to sever the joint tenancy and hold the merged property as tenants in common. Thus, David's argument that he is the surviving joint tenant of a portion of the property is unavailing.

Finally, David challenges the trial court's reliance on a draft subdivision plan. We do not construe the court's order as specifically enforcing the subdivision plan. See Hayes, 172 N.H. at 107. Rather, the court examined the evidence, including evidence of Richard and David's intent to subdivide and testimony demonstrating that they operated as if the property had been subdivided. It then partitioned the property equally, in the same way reflected in the draft subdivision plan. The court reasonably used its discretion to assign the property in portions it determined to be fair and equitable. See RSA 547-C:29. Partitioning the property in the same way reflected in the draft subdivision plan is not unfair, unreasonable, or inequitable. See Hayes, 172 N.H. at 107.

We have reviewed the record and conclude that the trial court's findings are supported by the evidence and are not erroneous as a matter of law. See Brooks, 168 N.H. at 715. We have considered David's remaining arguments, and have concluded that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993). We conclude that David has failed to demonstrate that the trial court's ruling was unreasonable or untenable.

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., did not participate in the final vote.

**Timothy A. Gudas,**
**Clerk**

5